IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JEFFREY C. STEWART,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT WEST CASUALTY COMPANY,<br><br>Defendant. | CV 23–36–M–DLC<br><br><br><br>ORDER |

Before the Court is Defendant Great West Casualty Co.'s ("Great West") Motion to Dismiss. (Doc. 3.) Great West moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted. For the reasons discussed below, the Court grants the motion.

## BACKGROUND

Plaintiff Jeffrey C. Stewart was involved in a motor vehicle accident on July 24, 2020, when he collided with a semi-truck trailer blocking his lane of travel. (Doc. 6 ¶¶ 4–7.) At the time of the accident Stewart was driving his personal vehicle, a 2003 GMC truck. (*Id.* ¶ 4.) The collision caused Stewart serious and permanent injuries. (*Id.* ¶ 8.) Stewart was traveling with a passenger who was also seriously injured. (*Id.* ¶ 9.)

The driver of the semi-truck was insured under a liability insurance policy

1

issued by United Specialty Insurance Company that provided liability coverage in the amount of $1,000,000.00. (*Id.* ¶ 10.) United Specialty paid the full policy limits to Stewart and his passenger. (*Id.* ¶ 12.) However, Stewart claims that the semi-truck driver's liability coverage was insufficient to cover the full amount he is entitled to recover as damages. (*Id.* ¶ 14.)

At the time of the accident, Stewart's business, S & S Contracting, had an insurance policy (the "Policy") through Great West. The Policy is a "Commercial Lines Policy" issued to "Jeffrey Stewart dba S&S Contracting." (Doc. 4-1 at 3.) Stewart is a Named Insured under the Policy. (*Id.*) The Policy's declarations page lists Medical Payments, Uninsured Motorists, and Underinsured Motorists coverages for "specifically described autos." (*Id.* at 7–8.) The "specifically described autos" listed in the Policy include a 1996 Kenworth Tractor but not the 2003 GMC truck that Stewart was driving at the time of the accident. (*Id.* at 6.)

The Policy's declarations page also states the premium and limit for each type of coverage. (*Id.* at 7.) Stewart paid a premium of $35 for Medical Payments coverage and $32 for Uninsured Motorists coverage, but no premium was paid for Underinsured Motorists coverage. (*Id.*) The limit for Medical Payments coverage is $5,000. (*Id.*) For Uninsured Motorists coverage, the declarations page states that the limit is "separately stated in each Uninsured Motorists coverage endorsement" and for Underinsured Motorists coverage, the limit is "included in

2

Underinsured Motorists coverage." (*Id.*)  The Uninsured Motorists coverage endorsement states that the limit for Uninsured Motorists coverage is $100,000 for each "accident." (*Id.* at 13.)

The Policy's Uninsured Motorists coverage endorsement contains the following pertinent provisions:

**A. COVERAGE**

**1.** We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle."

**B. WHO IS AN INSURED**

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

**a.** The Named Insured and any "family members" "occupying" a covered "auto."  The damages must result from "bodily injury" sustained by the "insured" caused by an "accident".  The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

**C. EXCLUSIONS**

This insurance does not apply to any of the following:

3

5. With respect to damages resulting from an "accident" with a vehicle described in Paragraph b. of the definition of "uninsured motor vehicle", "bodily injury" sustained by:

   a. An Individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

F. **ADDITIONAL DEFINITIONS**

2. "**Uninsured motor vehicle**" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" to which a liability bond or policy applies a the time of an "accident," but the amount paid under that bond or policy to the "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

(Doc. 4-1 at 13–15.)

The Policy's Medical Payments coverage endorsement contains the following pertinent provisions:

> **A. COVERAGE**
>
> We will pay related expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by an "accident".
>
> **B. WHO IS AN INSURED**
>
> 1. You while "occupying" or, while a pedestrian, when struck by any "auto".
>
> **C. EXCLUSIONS**
>
> This insurance does not apply to any of the following:
>
> 2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.

(*Id.* at 24.)

After the accident, Stewart made a claim for Uninsured Motorists coverage and Medical Payments coverage to Great West but Great West denied the claim. (Doc. 6 ¶ 18.) Stewart subsequently brought the instant action seeking a declaratory judgment that he is entitled to Uninsured Motorists and Medical Payments coverage under the Policy and bringing claims for breach of contract and

unfair trade practices under Montana law.  (Doc. 6 at 4–9.)  Stewart claims that, although the 2003 GMC truck was not a covered auto under the Policy, both Uninsured Motorists and Medical Payments coverage are personal and portable and would therefore apply in these circumstances.  (*See* Doc. 7 at 2–3.)  Great West has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted on the ground that neither coverage applies.  (Doc. 3.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).  "In general, the [Rule 12(b)(6)] inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff"; however, the Court "need not accept as true allegations contradicting

documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (internal citation omitted).

### DISCUSSION

Great West argues that the "allegations of the Complaint establish there is no underinsured motorists or medical payments coverage available to Plaintiff for the subject accident," and, therefore, all of Stewart's claims should be dismissed. (Doc. 3 at 1.) Stewart concedes that his claims for breach of contract and unfair trade practices are dependent on the applicability of Uninsured Motorists and/or Medical Payments coverage. (Doc. 7 at 17.) Accordingly, the Court need only determine whether Stewart is entitled to Uninsured Motorists or Medical Payments coverage; if neither coverage applies, the motion to dismiss must be granted, but if one or both of these coverages apply, then the motion must be denied. *See Truck Ins. Exch., v, O'Mailia*, 343 P.3d 1183, 1188 (Mont. 2015) (upholding the dismissal of an insured's first-party bad faith counterclaim because the claim was "dependent on whether the [insurer's] policy was applicable to the underlying claims"); *Dunluck v. Assicurazioni Generali S.P.A.*, 590 F. Supp. 3d 1293, 1307 (D. Mont. 2022) (dismissing claims brought under Montana common law and the UTPA because there was no coverage under the policy); *see also* Mont. Code Ann. § 33-18-242(5) (2023) ("An insurer may not be held liable [for bad faith] if the

7

insurer had a reasonable basis in law or in fact for contesting the claim.").

To determine whether either coverage applies, the Court must interpret the Policy's language. Because this Court is exercising its diversity jurisdiction over this matter, Montana's substantive law applies, including Montana's choice of law rules. *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015). In the absence of a choice of law provision within an insurance contract, the Court applies Montana Code Annotated § 28-3-102 to determine what law governs the contract's interpretation. *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014). Under this statute, an insurance contract is "to be interpreted according to the law and usage of the place it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Mont. Code Ann. § 28-3-102. Here, Montana law applies to the Court's interpretation of the Policy because Montana is the place of performance with respect to Stewart's insurance claim.

Under Montana law, interpretation of an insurance contract is a question of law for the Court to resolve. *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011). When interpreting insurance policies, Montana courts follow general rules of contract law: the policy must be read as a whole; where possible, the courts must reconcile the policy's various parts to give each meaning an effect; and the terms and words used are given their usual meaning and construed using

common sense. *Farmers All. Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998) ("*Holeman II*"); *Travelers Cas. & Sur. Co. v. Ribi Immunochem Rsch.*, 108 P.3d 469, 474 (Mont. 2005). Any ambiguities in the terms of an insurance policy must be construed in favor of the insured, and in favor of extending coverage. *Loendorf v. Emps. Mut. Cas. Co.*, 513 P.3d 1268, 1272 (Mont. 2022).

### I. Uninsured Motorists Coverage

Under Montana law, "parties to an insurance contract may include provisions that exclude coverage without violating public policy if the exclusion applies to optional, rather than mandatory coverage." *Newbury v. State Farm Fire & Cas. Ins. Co.*, 184 P.3d 1021, 1029 (Mont. 2008). In Montana, Uninsured Motorists coverage is mandatory unless explicitly rejected by the insured.[1] Mont. Code Ann. § 33-23-201(1). Thus, limitations on Uninsured Motorists coverage that are inconstant with statute are void. *See Jacobsen v. Implement Dealers Mut. Ins. Co.*, 640 P.2d 908 (Mont. 1982) (invalidating an owed auto exclusion to Uninsured Motorists coverage). Uninsured Motorists coverage is also "personal and portable" and applies whether the insured is "injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback, or even on a

---

[1] The statute defines "uninsured motor vehicle" as "a land motor vehicle, the ownership, the maintenance, or the use of which is not insured or bonded for bodily injury liability at the time of the accident." Mont. Code Ann. § 33-23-201(1).

pogo stick." *Id.* at 912. Underinsured Motorists coverage is also personal and portable. *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 899 (Mont. 2003). However, unlike Uninsured Motorists coverage, Underinsured Motorists Coverage is not mandatory and, therefore, may be contractually limited by the parties in a manner consistent with Montana's public policy. *Hamilton v. Trinity Univ. Ins. Co.*, 465 F. Supp. 2d 1060, 1065 (D. Mont. 2006) ("Exclusion for underinsured motorist coverage are not automatically prohibited because the legislature has made no similar declaration . . . [mandating] this type of coverage; rather, parties may freely contract for exclusion so long as they do not contravene public policy as declared by the Montana Supreme Court.").

To begin, it is undisputed that the driver of the semi-truck was insured and his insurance did pay Stewart the $1,000,000.00 limit. Accordingly, if Stewart is entitled to Uninsured Motorists coverage under the Policy, it must be pursuant to Paragraph b. of the definition of uninsured motor vehicle—an *underinsured* motor vehicle. Great West argues that Uninsured Motorists coverage and Underinsured Motorists coverage are distinct and, under the terms of the Policy, Underinsured Motorists coverage is not applicable to the 2003 GMC truck because it is not a covered auto. (Doc. 4 at 16–17.) Stewart responds that, because Great West elected to include underinsured motor vehicles in its definition of uninsured motor vehicles and there is no standalone Underinsured Motorists coverage provision in

the Policy, his claim falls within the scope of the Policy's Uninsured Motorists coverage, which is mandatory and cannot be contractually limited to exclude coverage for the 2003 GMC truck. (Doc. 7 at 9.) Thus, the Court must first determine whether Stewart's claim is for Uninsured Motorists coverage or Underinsured Motorists coverage under the Policy.

In *Grier v. Nationwide Mutual Insurance Company*, 812 P.2d 347 (Mont. 1991), the Montana Supreme Court addressed a similar issue. In that case, the motor vehicle insurance policy included Uninsured Motorists coverage that included in its definition of "uninsured motor vehicle" a vehicle that is "underinsured." *Id.* at 348. The court focused on the "unique fashion" in which the policy at issue was written:

> [T]he "underinsured" motorist provision is part of the section on uninsured motorist coverage. There is no separate policy section providing for underinsured motorist coverage. According to the declarations page of the policy, no separate premium was charged for underinsured motorist coverage. In fact, the declarations page makes no mention whatsoever of underinsured motorist coverage.

*Id.* at 349. The court then concluded that "*under these circumstances*, the 'underinsured' coverage is part of the uninsured motor vehicle coverage." *Id.* (emphasis added).

However, the Montana Supreme Court has distinguished from *Grier* where the policy at issue references Underinsured Motorists coverage in its declarations page. In *Farmers Alliance Mut. Ins. Co. v. Holeman*, 924 P.2d 1315, 1319 (Mont.

11

1996) ("*Holeman I*"), the policy at issue was nearly identical to the policy in *Grier*, except that the policy in *Holeman I* "set[] forth the underinsurance coverage on the declarations page." The Court noted this distinction in reaching its decision. Two years later, in *Holeman II*, the Montana Supreme Court again relied on this distinction, finding that "the policy at issue in *Grier* differs substantively from the one at issue in the present case," and therefore concluding that *Grier* does not control the court's analysis. 961 P.2d at 121. This Court has also noted that where a policy's declarations page specifically references Underinsured Motorists coverage, *Grier* may be distinguishable. *Kaufmann v. GEICO Gen. Ins. Co.*, No. CV 09-51-M-JCL, 2010 WL 11534141, at *6 (D. Mont. Feb. 1, 2010), *aff'd,* 400 F. App'x 258 (9th Cir. 2010).

Here, the Underinsured Motorists coverage provision is incorporated into the Policy's section on Uninsured Motorists coverage, there is no standalone provision providing for Underinsured Motorists coverage, and no separate premium was paid for Underinsured Motorists coverage. However, like the policy in *Holeman I* and *Holeman II,* the Policy's declarations page separately lists Underinsured Motorists coverage for specifically described autos. Accordingly, the Court concludes that, under the terms of the Policy, a claim for Underinsured Motorists coverage is distinct from a claim for Uninsured Motorists coverage. Thus, under the circumstances of this case, Stewart's claim is one for Underinsured Motorists

12

coverage, not Uninsured Motorists coverage, and may therefore be contractually limited.

This conclusion is also consistent with the general principle that parties are free to contractually limit any additional coverage that goes beyond the statutory minimum. *See Iowa Mut. Ins. Co. v. Davis*, 752 P.2d 166, 170 (Mont. 1988) (holding that, while parties may not contract around statutory minimum coverage, that does not "prohibit an insurer from entering into agreements with their insureds to limit coverage to the statutory minimum amounts"); *see also Fisher v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 871 (Mont. 2013) ("[O]ur precedent clearly distinguishes between mandatory coverage and optional coverages that fall outside the ambit of Montana's mandatory insurance laws"). Because the definition of uninsured motor vehicle in the Policy is broader than the definition of uninsured motor vehicle in § 33-23-201(1), it follows that the Policy's coverage for underinsured motor vehicles goes beyond the minimum coverage required by statute and may be contractually limited.

Having found that Stewart's claim is one for Underinsured Motorists coverage, the Court must next determine whether the Policy's limits on that coverage are valid and enforceable. The Policy includes two limits to Underinsured Motorists coverage. First, an insured must be occupying a "covered auto" at the time of the accident—the covered auto requirement. Second, the

Policy excludes coverage where the insured is occupying a vehicle owned by the insured that is not scheduled on the Policy and is in an accident involving an underinsured motorist—the owned auto exclusion. These two limits essentially have the same effect: restricting Underinsured Motorists coverage to vehicles listed in the Policy's declarations and for which a premium has been paid. In other words, these contractual limits remove the personal and portable quality of the Underinsured Motorists coverage. It is undisputed that the 2003 GMC truck that Stewart was driving at the time of the accident was not a covered auto and would be subject to the owned auto exclusion if those limits are found to be valid.

Because Underinsured Motorists coverage is not mandatory, the only remaining question is whether the Policy's contractual limits on Underinsured Motorists coverage violate public policy. Both the Montana Supreme Court and this Court have repeatedly upheld similar limits on Underinsured Motorists coverage in both personal and commercial auto insurance policies. *See, e.g.*, *Hamilton*, 465 F. Supp. 2d at 1067 (upholding an owned vehicle policy exclusion for Underinsured Motorists coverage in a personal auto policy); A*m. States Ins. Co. v. Flathead Janitorial & Rug Servs.*, 355 P.3d 735, 739 (Mont. 2015) (denying Underinsured Motorists coverage because the individual was not in a covered auto at the time of the accident); *Kilby Butte Colony, Inc. v. State Farm Mut Auto Ins. Co.*, 403 P.3d 664, 669 (Mont. 2017) (same); *O'Connell v. Liberty Mut. Fire Ins.*

14

*Co.*, 43 F. Supp. 3d 1093, 1099 (D. Mont. 2014) ("[T]he 'owned vehicle' exclusion to [Underinsured Motorists] coverage is not against public policy or contrary to the reasonable expectations of the insured.").

In *Hamilton*, this Court explained that, although it is Montana's public policy that "an insurer may not exclude coverage for which it has received valuable consideration," the owned auto exclusion is consistent with this policy because an insured's "failure to pay valuable consideration is why the exclusion applie[s]." 465 F.2d at 1066. This Court went on to explain that the owned auto exclusion is consistent with Montana's public policy in two additional respects: (1) it aligns with the policy of "protecting insurers from 'schemes' by insured"—such as receiving benefits at a cheaper rate—and (2) it aligns with the policy of encouraging all drivers to obtain automobile insurance for *each* of their vehicles. *Id.* (emphasis added). These same principles apply to the covered auto requirement as well.

Accordingly, the Court concludes that the covered auto requirement and owned auto exclusion to Underinsured Motorists coverage set forth in the Policy are valid and applicable to the circumstances here. Therefore, Stewart is not entitled to Uninsured Motorists or Underinsured Motorists coverage under the Policy.

## II.   Medical Payments Coverage

Like Underinsured Motorists coverage, Medical Payments coverage is optional under Montana law and personal and portable in nature. *Newbury*, 184 P.3d at 1027 ("Medical payments coverage is not mandatory in Montana. Its presence in an insurance contract is at the sole discretion of the parties to the contract."); *see also Cross v. Warren*, 435 P.3d 1202, 1208 (Mont. 2019) (Medical Payments coverage is personal and portable).  The Policy included Medical Payments coverage subject to an owned auto exclusion similar to the one discussed above.  Great West argues that Medical Payments coverage is inapplicable here because of this owned auto exclusion.  (Doc. 4 at 23–24.)  Stewart does not contest that the owned auto exclusion applies to the circumstances of the accident; instead, he argues that the exclusion is invalid because it is against public policy to negate the personal and portable nature of Medical Payments coverage.  (Doc. 7 at 16.)

As explained above, the Court has already rejected the argument raised by Stewart.  *See Hamilton*, 465 F.2d at 1066.  The rationale in *Hamilton* is equally applicable to owned auto exclusions for Medical Payments coverage because Medical Payments coverage is not mandatory and owned auto exclusions are consistent with Montana's public policy.

## CONCLUSION

Stewart is not entitled to Uninsured Motorists, Underinsured Motorists, or

Medical Payments coverage under the Policy. Because there is no coverage, Stewart cannot state a claim for breach of contract or unfair trade practices under Montana law. Because amendment would be futile, the Court dismisses this matter with prejudice.

    IT IS ORDERED that Defendant's Motion to Dismiss (Doc. 3) is GRANTED. The above captioned matter is DISMISSED with prejudice.

    The Clerk of Court is directed to close this matter.

    DATED this 11th day of March, 2024.

*/s/ Dana L. Christensen*
Dana L. Christensen, District Judge
United States District Court